REDMANN, Judge.
Defendant’s offer for a contract for re-bushing eight cranes on offshore rigs provided plaintiff was to be paid “for work performed”, “fixed price per crane $475 ea., plus price per hour $40 hr., price overtime hour (after 8 hrs.) $60 hr.” Plaintiff’s acceptance of the offer, with defendant’s approval, added to the after-eight-hours overtime provision “and until my man returns to shop”. The question is of interpretation of the contract’s overtime provision in its application to an employee who stays overnight on the off-shore rig.
Plaintiff contends, in substance, that the $40 rate was for his employee’s travel time of about four hours each way from plaintiff’s shop in Harahan to the off-shore rigs, and the $60 rate was applicable to all time spent on the rig — both working time and sleeping time. Thus plaintiff contends that when, for example, an employee left the shop at 6 a. m. on January 13 and stayed on the rig until January 17, arriving at the shop at 11 a. m. on the 17th, that total of 101 hours is payable as 8 hours at $40 and 93 hours at $60 (of which only 44 hours were hours of work), for a total work charge of $5,900.
Defendant contends that overtime is due “after 8 hrs.” of each day, rather than of each trip off-shore, and further contends that no pay is due for the normal 12 hour non-working period on the rigs even if the employee does stay on the rig. Thus defendant calculates the January 13-17 work charge as eight hours at $40 from 6 a. m. to 2 p. m. and four hours at $60 from 2 p. m. to 6 p. m. on January 13,14,15 and 16, plus five hours at $60 from 6 a. m. to 11 a. m. on January 17 for a total of $2,440 (compared to plaintiff’s $5,900).
The trial judge ruled that no pay was due for non-working hours (from which plaintiff appeals) but that the $40 pay was only applicable to the first eight hours of work on each crane, after which all work on each crane was payable at $60 an hour, resulting in an award of $3,238.85 (from which defendant appeals by answer to plaintiff’s appeal).
Supportive of the trial judge’s position is testimony that the contract was “set up for one day at a time” and contemplated that each crane would take about a 12-hour working day to complete — in which case the work charge would have been $40 for eight hours only and $60 for all additional time on each crane, but there would not have been a second day of work to begin at either $40 or $60 on the same crane, and there would have been no staying overnight on the rig.
Also somewhat supportive is plaintiff’s testimony that he paid his employee $6 an *701 hour for the first eight hours of each trip and $12 an hour thereafter (although not for the non-working time).
We first reject plaintiff’s claim for pay for the non-working time on the rigs. The contract — the law between these parties, C.C. 1901 — was to pay “for work performed . . price per hour” etc., and plaintiff’s addition of “until my man returns to shop” seems most naturally to alter the bargain to pay “for work performed” only to the extent that travel time was to be included in paid hours. The custom of the industry — applicable to determine ambiguity, C.C. 1953 — is not to pay for non-working hours, according to the testimony of defendant’s employees and the proffer of the testimony of others knowledgeable in the field (although defendant had never previously employed a machinist off-shore and plaintiff suggests that pay plans for others are irrelevant). Finally, the reasonableness of not paying for nonworking hours commends itself in defendant’s payment of plaintiff just as in plaintiff’s payment of its own employee. We see no reasonable connection (other than, possibly, insurance costs supposed to be covered by the $475 per crane) between plaintiff’s business costs or basis for profits and its employee’s spending non-working hours offshore rather than at home. After the employee had already worked 12 hours in the day, and would require four more hours to return to the shop, plaintiff could not anticipate his working at the shop. We conclude there is no basis upon which plaintiff can fairly recover $60 an hour for the 12-hour non-working period on the rigs.
We do find a basis for awarding $60 an hour for all time after the first eight hours on each trip. If the employee returned from the rig to the shop each day, eight hours of travel time would have to be added to the hours of work (probably reducing them to fewer than 12) and that travel time would itself exhaust the eight hours of regular pay so that all actual working time would be payable as “overtime”. Thus it was to defendant’s advantage to start paying the after-travel “overtime” rate at 6 a. m. on the second day of a trip rather than pay both the travel pay at $40 and all actual work at $60.
We can sympathize with defendant’s basic position that “after 8 hours” has an obvious relationship to the standard eight-hour day. But the circumstances discussed, including the quoted “price per crane” wording of the contract, justify the trial judge’s interpretation as a reasonable one, and perhaps the most reasonable one.
We can also sympathize with plaintiff’s objection that, despite plaintiff’s having invoiced defendant on its 24-hours-daily basis, defendant said nothing for about four months until the contract was completed, and meanwhile paid two of the invoices. Plaintiff suspects it was lulled into completing a job when defendant knew plaintiff believed it was being paid 24 hours a day yet defendant, believing only 12 hours were payable, kept silent. The trial judge presumably believed defendant’s evidence that the payment of the first invoices was by oversight and not in any effort to deceive plaintiff, and that the mistake was not discovered until shortly before defendant notified plaintiff. Defendant’s mistake does not entitle plaintiff to payment under its erroneous contract interpretation.
Affirmed.